REDMANN, Judge.
Dorothy Poydras appeals from a judgment in favor of A. Lester Sarpy for $1,140 attorney and other fees plus 25% attorney fees and costs. We reverse. Ignoring other problems, we hold that until a prospective lender and the prospective borrower have reached an agreement in writing on the terms of a desired loan to be secured by mortgage on immovable property (subject to property title and value requirements), the agreement to lend is not enforceable by either party and therefore the lender cannot reasonably incur either attorney or appraisal fees and any oral promise by the borrower to pay the lender’s reasonable costs (including those fees) is without effect, in the absence of a showing of special circumstances which would operate' independently as cause for making the promise enforceable.
Sarpy is the attorney for and works in the office of Alphonse Mortgage Company, Inc. We point out that defendant never had any dealings with Sarpy, and that Sar-py was employed not by defendant but by Alphonse (a corporation over which, one infers from the record, Sarpy exercises control); but we decide the case as if Sarpy were authorized to pursue the claim for Alphonse.
In early November 1978 Alphonse learned through one Floyd Johnson, an employee of Broad Mortgage Company and an acquaintance of Poydras, that Poydras was interested in a mortgage loan to refinance an existing loan. Poydras had some telephone discussion with Harold M. Voss, Jr., office manager for Alphonse, and expressed interest if not agreement in a mortgage loan of $58,000 repayable $1,160 monthly for 10 years (for a total of $139,200).[1] Although there is testimony that Poydras agreed to all terms, there is no testimony setting forth the details of any discussion of the prepayment or other terms. At Alphonse’s request Poydras delivered to Alphonse’s night depository insurance papers and a deed or mortgage with property descriptions. Sarpy prepared two printed mortgage forms (showing Adele Lamb as notary) and a note for the full $139,200 giving Poydras no right of prepayment, so that she would have had to pay the whole $81,200 interest on her $58,000 loan if she wanted to sell the property. (A separate proposal, signed by Adele Lamb, secretary-treasurer, conditionally offered a prepayment rebate *1371 of 60% of that part of the unearned interest that the sum of the digit methods would allow* Thus Poydras would still have had to pay a penalty of over $32,000 on her $58,000 loan if she immediately wanted to pay the loan off.) Poydras refused the loan.
Sarpy thereafter sued for $40 for mortgage and conveyance certificates (though none were produced at trial), $200 for “redaction and passage of two authentic acts of mortgage,” $700 for “title examinations and opinion” (although Sarpy’s own evidence shows that he wrote no opinion and that his file contained no abstract of title), and $200 “due Alphonse Mortgage Co., Inc., [sic] re appraisal fee.” We conclude none of those fees are due.
The trial judge gave judgment for the’ full amount Sarpy sued for plus costs and— apparently because Sarpy titled his petition “Open-Account” — 25% attorney fees notwithstanding that Sarpy did not have an attorney to try his case but tried it himself.
The express oral promise by a prospective borrower to repay to the lender the reasonably necessary attorney and appraisal fees resulting from a proposed mortgage loan is ordinarily understood as conditioned upon the lender’s enforceable obligation to make the desired loan if title and value of the security offered are suitable. The cause that makes the borrower’s promise enforceable, La.C.C. 1893, is the lender’s agreement to lend. Unless the lender agrees that it will lend (on proper security) on the terms the borrower desires, the lender behaves unreasonably in expending attorney and appraisal fees because neither appraisal nor title examination is necessary. Therefore, when there is no enforceable commitment to lend, the lender must show other circumstances which would constitute cause for making the borrower’s promise enforceable. Moreover, because a mortgage on immovable property “can only be contracted by [notarial] act . . . or by act under private signature,” C.C. 3305, agreement for a loan on such a mortgage must also be in writing to be enforceable.
In our case the lender never had a complete, enforceable agreement to make the loan because of the lack of a writing embodying the agreement. In addition, it is unproven that the lender had reached an agreement with the borrower that the borrower should have no right to prepay the mortgage — which was what the proffered mortgage proposed, although a collateral agreement was then offered to allow a less-than 60% rebate of interest on prepayment. The inference is strong from the documentary evidence that there was no agreement that the mortgage could not be paid off in advance, nor that prepayment would require a penalty of 40% of the unearned interest. After acting prematurely in having legal and appraisal work done without a loan being properly agreed to, the lender proposed a loan with a prepayment penalty of over 40% of all unearned interest, which Poydras reasonably rejected. The lender therefore could not oblige Poydras to pay its unreasonable legal and appraisal fees.
Reversed; judgment for defendant with all costs.

. The interest rate on this loan thus appears to have been 21% 'per annum, prohibited by La. R.S. 9:3503. We pretermit exploration of the implications of the invalidity of an agreement to borrow at usurious interest.